RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

SHERMAN WAGNER,

    *Petitioner-Appellant,*

  *v.*

WILLIE O. SMITH, Warden,

    *Respondent-Appellee.*

No. 07-2129

—————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10514—Victoria A. Roberts, District Judge.

Argued: July 31, 2009

Decided and Filed: September 24, 2009

Before: BATCHELDER, Chief Judge; KENNEDY and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Robert A. Amicone II, SQUIRE, SANDERS & DEMPSEY L.L.P., Cincinnati, Ohio, for Appellant. Debra M. Gagliardi, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Pierre H. Bergeron, Thomas D. Amrine, Colter L. Paulson, SQUIRE, SANDERS & DEMPSEY L.L.P., Cincinnati, Ohio, for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

—————————————

## OPINION

—————————————

KENNEDY, Circuit Judge. Petitioner Sherman Wagner, a/k/a Billy Lynn Wagner, appeals the district court's denial of his petition for a writ of habeas corpus. In his various state and federal appeals relating to his 2002 state murder trial, Wagner has made numerous claims of violations that he claims warrant reversal of his conviction. Wagner's certificate of appealability in this Court has been limited to the following claims: 1) prosecutorial

1

misconduct based on the prosecutor's reference to unrelated murder investigations of Petitioner; 2) prosecutorial misconduct based on the prosecutor's failure to correct perjured testimony; 3) ineffective assistance of counsel based on counsel's failure to object to the prosecutor's reference to the prior murder investigations; 4) ineffective assistance of counsel based on counsel's failure to challenge the testimony of witness Antonio Edwards; 5) ineffective assistance of counsel based on counsel's failure to challenge the testimony of witness Thelyus Johnson; and 6) ineffective assistance of counsel based on counsel's inappropriate remarks during closing argument. For the reasons which follow, we find three of Wagner's claims to be unexhausted; therefore, we VACATE the judgment of the district court and REMAND for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because we resolve this case on procedural grounds, a long recitation of the facts is not necessary. Instead, we refer verbatim to the relevant facts relied upon by the Michigan Court of Appeals, facts which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1):

> According to the testimony at trial, Kiley Moss and Thelyus Johnson arranged to purchase drugs from Antonio Edwards in Detroit. The two men took a bus from Lansing to Detroit, where Edwards met them. Edwards did not immediately have the drugs available. Eventually, Edwards and Sol Bryant took the men to a house where they met Deshawn Lucci. The men began to set up a scale to weigh the drugs, but moved to a back room because that was the only room with a light. While the men were in the back room, another man, whom Johnson identified as [Wagner], came into the room, pointing a gun. Johnson claimed that [Wagner] shot and robbed him, and also shot Moss. Johnson pretended to be dead and was able to leave the house after the others left. Moss, however, died from his gunshot wounds. His body was later burned when the house was set on fire.

*People v. Wagner*, No. 245091, *1-2 (Mich. Ct. App. October 28, 2004).

On January 7, 2004, Petitioner, through separate appellate counsel, appealed his conviction as of right to the Michigan Court of Appeals. He also moved the court to grant him an evidentiary hearing to determine whether Petitioner was denied the effective

assistance of counsel.[1]  On February 27, 2004, the Michigan Court of Appeals granted Petitioner's motion for an evidentiary hearing and retained jurisdiction over his other claims while the hearing was pending.  The evidentiary hearing was held on April 2 and April 5, 2004, with Petitioner's trial attorney testifying directly about his representation. On April 5, the judge presiding over the hearing ruled that Petitioner's trial counsel had not been constitutionally deficient and denied Petitioner's motion for a new trial.   On June 25, 2004, Petitioner filed a second brief before the Michigan Court of Appeals, adding two amended ineffective assistance of counsel claims to his previous brief still pending before the court.  On October 28, 2004, the Michigan Court of Appeals rejected each of Petitioner's claims and affirmed his conviction.   Petitioner, now filing pro se, appealed this judgment to the Michigan Supreme Court, but on November 2, 2005, that court exercised its discretion not to review the case and denied Petitioner's appeal.

Under Michigan Court Rules 6.500 *et seq.*, a Michigan state defendant may file one post-conviction motion for relief from judgment in addition to a direct appeal as of right.  This "6.500 motion" is to be filed in the county circuit court and can be appealed to the Michigan Court of Appeals and the Michigan Supreme Court.  *See* M.C.R. 6.509. Petitioner chose not to file such a motion, however, and opted instead to proceed directly to federal court and file a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   On February 7, 2006, Petitioner filed his habeas petition in the Eastern District of Michigan, alleging prosecutorial misconduct, ineffective assistance of counsel, due process violations, and judicial misconduct.   On August 15, 2007, the district court denied Wagner's petition, rejecting the merits of his claims without addressing whether the procedural requirements of each claim had been satisfied.

On June 4, 2008, a certificate of appealability was granted on two of Petitioner's claims–the ineffective assistance of counsel claim generally, and the prosecutorial misconduct claim generally–and Petitioner was appointed new counsel to argue the merits on his behalf.   In his brief to this Court, Petitioner (through his new counsel) has

---

[1]Additional facts relating to this appeal and Petitioner's other appeals will be discussed, when relevant, during our exhaustion analysis of Petitioner's claims.

provided three alleged instances of ineffective assistance and at least three alleged instances of prosecutorial misconduct.

**STANDARD OF REVIEW**

We review de novo the district court's decision. *Hall v. Vasbinder*, 563 F.3d 222, 231 (6th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant habeas corpus relief for a given claim if the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In applying these standards, we examine the holdings of the Supreme Court as they existed at 'the time of the relevant state-court decision.'" *Hall*, 563 F.3d at 232 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). We may also examine the decisions of other courts, including our own decisions, to determine if a legal principle was clearly established by the Supreme Court. *Id.* (citing *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004)).

**ANALYSIS**

**I.**

A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See, e.g.*, *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003). This includes a requirement that the applicant present the issue both to the state court of appeals and the state supreme court. *See Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990) (citing *Winegar v. Corr. Dep't*, 435 F. Supp. 285, 289 (W.D. Mich. 1972)). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal

basis for each claim.  *See, e.g.*, *id.* (citing *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002)); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).  This does not mean that the applicant must recite "chapter and verse" of constitutional law.  *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006).  But the applicant is required to make a specific showing of the alleged claim.  Finally, a federal court cannot grant habeas relief if there still is a potential state remedy for the state courts to consider.  *See* 28 U.S.C. § 2254(b)(1)(B).  Put otherwise, if a state remedy is no longer available at the time of the federal petition, the exhaustion doctrine poses no bar to federal review.  *See id.*; *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).

Although the exhaustion doctrine is not a jurisdictional matter, *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000), it is a threshold question that must be resolved before we reach the merits of any claim.  *See Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009).  Furthermore, as a general matter, a federal court may not grant a writ even on a "mixed" petition, "one containing claims that the petitioner has pressed before the state courts and claims that he has not."  *Id.*  Therefore, each claim must be reviewed for exhaustion before any claim may be reviewed on the merits.  In this case, the state has challenged three of Petitioner's claims on exhaustion grounds: 1) the prosecutorial misconduct claim relating to the use of evidence of uncharged homicides; 2) the prosecutorial misconduct claim relating to the elicitation of false testimony; and 3) the ineffective assistance of counsel claim relating to the failure to challenge the prosecutor's use of evidence of uncharged homicides.  Upon review of each, we find that none of these claims has been properly exhausted.

## A.  *Prosecutorial Misconduct–Use of Prior Murder Evidence*

The government argues that Petitioner has not exhausted his first claim of prosecutorial misconduct, that the prosecutor impermissibly implicated Petitioner during trial in the unrelated murders of Kamal Logan and William Moody.  In response, Petitioner cites to three sections in his state court briefs in an attempt to show that this claim was fairly presented to the state courts.  First, Petitioner claims that the headings in his first brief to the Michigan Court of Appeals sufficiently stated the claim.  Second,

he claims that the body of this brief, specifically within Claim VIII, sufficiently states the legal and factual basis for this claim. Finally, Petitioner claims that, in his second brief submitted to the Court of Appeals after completion of the evidentiary hearing, he fairly and fully stated this claim yet again.

We find, however, that the language cited by Petitioner fails to meet the "fair presentation" standard, and that Petitioner thus never exhausted this claim. First, despite Petitioner's argument to the contrary, the headings in his state appellate brief did not fairly present the claim to the Michigan Court of Appeals. Although Petitioner cites to several of his brief's headings, Heading VIII comes closest to correctly stating the claim that the prosecutor impermissibly implicated Petitioner in two unrelated murders.[2] That heading reads: "VIII. APPELLANT SHERMAN WAGNER WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S MISCONDUCT THROUGHOUT THE TRIAL AND VIOLATED HIS RIGHT TO DUE PROCESS OF LAW CLAUSE OF BOTH THE FEDERAL AND STATE CONSTITUTIONS." This heading, however, is simply too vague to count as a fair presentation of the prosecutorial misconduct claim in question. As stated above, the specific legal and factual basis for the claim must be provided to the state court. *Frazier*, 343 F.3d at 797. Here, the heading arguably states the legal basis for the claim. *See Newton*, 349 F.3d at 877 (noting that a petitioner "need not 'recite book and verse on the federal constitution'" (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984))). The problem is that the heading fails to state, with any degree of specificity, the *factual* basis for the claim. This is not to say that appellants are required to state with exact specificity the factual nature of their claim in every heading of every brief. But Petitioner cannot rely on such a heading to show that he

---

[2]Heading V is also arguably relevant. It states: "V. THE TRIAL COURT'S FAILURE TO GRANT A MISTRIAL AFTER ALLOWING THE PROSECUTOR TO INTRODUCE PREJUDICIAL AND IRRELEVANT EVIDENCE . . . THAT ONLY SHOWED THE APPELLANT WAS A BAD MAN DEPRIVED APPELLANT WAGNER OF A FAIR TRIAL." However, there are two problems with this heading as it relates to exhaustion of this specific prosecutorial misconduct claim. First, the heading clearly suggests that the claim to which it refers is that the *trial judge's* errors entitle Wagner to post-conviction relief. Although the alleged misconduct stems from the prosecutor's unchecked behavior, the basis of the claim is the judge's alleged misconduct, not the prosecutor's misconduct. Thus, this heading fails to state the proper basis for the claim in question here, namely, that it is a prosecutorial misconduct claim. Furthermore, the heading is too vague to count as fairly presenting the *factual* basis for the claim. The prosecutor's introduction of "prejudicial and irrelevant evidence" could mean anything, and is not necessarily limited to or inclusive of the allegation that she introduced evidence of unrelated homicides.

fairly presented the factual basis of this specific prosecutorial misconduct claim if the heading itself makes no mention of the prosecutor's use of the unrelated and uncharged murders.

The language in the body of the brief to which Petitioner cites is no more helpful to his cause. Petitioner relies on a section of his brief which states that "the Prosecutor's pervasive conduct throughout the proceedings denied him . . . a fair trial," and that "[t]he Prosecutor deliberately interjected irrelevant and prejudicial evidence throughout the entire trial." This language suffers from the same defect as the headings on which Petitioner relies. While the language may barely state a sufficient legal basis for the claim, it fails entirely to state a factual basis for the claim. General references to "pervasive misconduct" and "irrelevant and prejudicial evidence" simply do not serve as a fair presentation of the specific claim that the prosecutor impermissibly brought up two murders not at issue in the trial.

Petitioner then cites to a different section of the brief which states that the prosecutor brought in "bad acts evidence" and "did everything possible to portray the Appellant as a bad man." Petitioner also refers to a statement in his state appellate brief where he accused the prosecutor of inserting "prejudicial evidence of his prior arrests . . . ." This language, if read in a vacuum, seems more like the specific factual basis needed to fairly present this claim. However, when read in context of the paragraph from which this language comes, it is apparent that Petitioner was not in fact referring to this specific prosecutorial misconduct claim at all. In his brief to the Michigan Court of Appeals, Petitioner focused his prosecutorial misconduct claim on other alleged misconduct: namely, that the prosecutor impermissibly elicited evidence of his aliases, mugshots, and police reports relating to his previous *theft* convictions in order to make him look like a "bad man." All of the aforementioned language Petitioner cites is clearly related to these thefts.[3] At no point in his initial brief to the Michigan Court of Appeals does Petitioner ever mention the *murder* evidence used by the prosecutor. Thus, the

---

[3]Petitioner also used similar language when discussing the allegation that the prosecutor improperly conducted an in-court identification involving a different witness. But this claim is again unrelated to the prosecutorial misconduct claim in question here.

language to which Petitioner cites can only refer to a wholly distinct prosecutorial misconduct claim and does not fairly present the claim in question here.

Finally, Petitioner relies on the language found in his second brief to the Michigan Court of Appeals, which was filed after the evidentiary hearing. In this brief, Petitioner explains in some detail how, during Petitioner's own testimony, the prosecutor questioned him about the two unrelated murders and implicated him as the assailant in each instance. However, because this brief only addressed new evidence acquired from the evidentiary hearing regarding the effectiveness of Petitioner's trial counsel, it only expounds upon Petitioner's ineffective assistance of counsel claims and does not readdress the prosecutorial misconduct claims. The brief does mention the pertinent conduct of the prosecutor, but it does so in the context of ineffective assistance allegations, not in the context of a prosecutorial misconduct claim. Petitioner argues that this distinction is irrelevant, and focuses only on the fact that this language was presented to the Court of Appeals. However, the doctrine of exhaustion requires that the same claim under the same theory be presented to the state courts before raising it in a federal habeas petition. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Williams v. Bagley*, 380 F.3d 932, 970 (6th Cir. 2004)). The language cited from the Brief After Remand, however, makes the claim in the context of an ineffective assistance claim, and so does not present the same claim under the same theory. Thus, this language cannot be used to satisfy the exhaustion requirement.

In sum, Petitioner cites to no language in any of his state court briefs that suffices to present fairly this claim to the state courts. Therefore, Petitioner has failed to exhaust the claim that the prosecutor impermissibly injected unrelated murder evidence into Petitioner's trial.

## B.  *Prosecutorial Misconduct–Eliciting False Testimony*

The government also argues that Petitioner has not exhausted a second claim of prosecutorial misconduct, that the prosecutor knowingly elicited false or perjured testimony from Edwards.  Although this is a closer question, we find that Petitioner has also failed to exhaust this claim in the state courts.  Petitioner points to mention in his brief to the Michigan Court of Appeals of a "manifest injustice" due to the fact that "[t]he People used Antonio Edwards' perjured testimony to convict him."  The brief even includes specific factual allegations that underlie the perjured testimony claim.  However, Petitioner's allegation here was not made in the context of a prosecutorial misconduct claim at all.  Rather, it was made as a basis for a *judicial* misconduct claim, and was made under the following heading:

> I.  The *TRIAL COURT* CLEARLY ERRED WHEN SHE FAILED TO GRANT APPELLANT WAGNER AN EVIDENTIARY HEARING AND A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE OF A KEY PROSECUTION WITNESS WHO WAS INDUCED BY THE PROSECUTION AND THE POLICE TO TESTIFY FALSELY AGAINST THE APPELLANT AT TRIAL IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW.

(Emphasis added.)  Additionally, the legal precedent to which he cites relates to the standard for reviewing a trial court's allegedly improper behavior, not the standard of review for a prosecutorial misconduct claim.  Indeed, as is evidenced by the language of the heading, Petitioner was not even challenging the judge's failure to rebuke the prosecutor for her misconduct, but rather was challenging the judge's decision not to grant an evidentiary hearing to investigate the allegedly perjured testimony.  Petitioner need not cite to "chapter and verse" of the appropriate constitutional law, *Slaughter*, 450 F.3d at 236, but the language used by Petitioner in the state court simply failed to present in the same factual and legal posture the claim he now alleges before this Court.  *See Newton*, 349 F.3d at 877; *see also Pillette*, 824 F.2d at 497.

Petitioner also refers this Court to his supplemental state appellate brief, where he quite clearly laid out the prosecutorial misconduct claim in question, highlighted all of the relevant facts, and cited to appropriate Supreme Court precedent regarding the

prosecutorial duty to correct perjured testimony. As noted previously, however, this supplemental brief addresses and analyzes Petitioner's ineffective assistance of counsel claims rather than his prosecutorial misconduct claims. Thus, it did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court. With no other language to rely on, Petitioner therefore did not fairly present this claim to the state courts, which means that it must also be deemed unexhausted.

### C. Ineffective Assistance of Counsel--Failure to Object to Prior Murder Evidence

The government also argues that Petitioner has not exhausted the claim that his trial attorney was ineffective for failing to object during Petitioner's cross-examination to questions about the uncharged homicides. While Petitioner points to sections of his state court briefs that might be sufficient to exhaust this claim before the Michigan Court of Appeals, he did not present the "same claim under the same theory," *Pillette*, 824 F.2d at 497, in his pro se appeal to the Michigan Supreme Court. For a claim to be reviewable at the federal level, each claim must be fairly presented at every stage of the state appellate process. *See Hafley*, 902 F.2d at 483; *see also Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *Winegar*, 435 F. Supp. at 289.

In his brief to the Michigan Supreme Court, Petitioner raised a claim of ineffective assistance of counsel based on his counsel's failure to object to or exclude evidence of Petitioner's aliases and the "evidence of crimes attached to those aliases." In a section of that brief presenting a claim of prosecutorial misconduct, Petitioner also included a recitation of the facts surrounding the *prosecutor's* misuse of evidence of uncharged homicides. Petitioner never, however, presented claim for relief based on his *counsel's* failure to object to the evidence of uncharged homicides, and so the Michigan Supreme Court never had the opportunity to address the claim together with its supporting facts. As we cannot say that he has fairly presented this claim to the state courts, we find that Petitioner failed to exhaust this claim for purposes of habeas review.

## II.

Despite Petitioner's failure to present these claims to the state courts, the exhaustion doctrine would pose no bar to our review if there were no longer any state avenue available with which to pursue these unpresented claims and seek adequate relief. *See* 28 U.S.C. § 2254(b)(1)(B). In this case, however, there appears to be a state procedure that Petitioner can still pursue to obtain relief. Specifically, Petitioner is entitled to return to the county circuit court and file a post-conviction, post-direct-appeal motion for relief from his judgment of conviction. M.C.R. 6.502. Since Petitioner has not yet filed such a motion, and since there is no statutory time limit for such a filing, he could still do so now. Under the pertinent Michigan Court Rules, the county court may not entertain such a motion if it finds that the unexhausted claims could have been raised on direct appeal, unless Petitioner can show "good cause" for not raising them and actual prejudice. M.C.R. 6.508. But there is no reason to believe that Petitioner would be unable to make such a showing,[4] and, in any event, such a determination is for the state court to make.

## III.

One question remains: what is to be done with Wagner's federal petition if it contains unexhausted claims? This we leave for the district court, in conjunction with the parties, to resolve. *See Harris*, 553 F.3d at 1031. In *Harris*, this Court laid out the options a district court may pursue when dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have . . . remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines* [*v. Weber*, 544 U.S. 269, 274 (2005)]; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275 . . .; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278 . . .; or (4) ignore the exhaustion

---

[4] At the very least, Petitioner seems to have a compelling "good cause" argument that his appellate counsel was ineffective for failing to raise these claims on appeal to the state court of appeals.

requirement altogether and *deny* the petition on the merits if *none* of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

*Id.* at 1031-32 (citing *Rockwell v. Yukins*, 217 F.3d 421, 425 (6th Cir. 2000)). In *Rhines*, the Supreme Court noted that the "stay and abeyance" method should only be available in instances where the petitioner can: 1) show good cause for failing to present the claims before the state court in the first instance, and 2) show that his unexhausted claims are not "plainly meritless." *Rhines*, 544 U.S. at 277. Because we must dismiss the petition for failure to exhaust, we do not reach the merits of Petitioner's claims. However, we note that Petitioner's claims, particularly the unexhausted claims, are not "plainly meritless." *See id.* Therefore, assuming Petitioner can show good cause for failing to present these claims to the state court in the first instance,[5] we see no reason why the district court should not grant a "stay and abeyance" while Petitioner exhausts in state court, should Petitioner opt against dismissing his unexhausted claims.[6]

**CONCLUSION**

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[5]*See supra* note 4.

[6]In its supplemental letter brief to this Court, Petitioner alleges that it would be futile to send the case back to the state courts for exhaustion because they already rejected similar claims. We believe, however, that such a statement underestimates the distinctions between the claims as they were submitted to this Court and as they were originally put to the state courts. We do not doubt, furthermore, that the state courts will honestly and thoroughly review the merits of the claims Petitioner now brings. Petitioner will have the opportunity to return to federal court for a review of the merits of these claims should the state courts be inclined not to provide the relief he seeks.