NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0507n.06

No. 08-4575

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Jul 22, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff-Appellee,      )
                             )
v.                           )    ON APPEAL FROM THE UNITED
                             )    STATES DISTRICT COURT FOR
WICKIE TUTT, JR.,            )    THE NORTHERN DISTRICT OF
                             )    OHIO
    Defendant-Appellant.     )
                             )
                             )

Before:  MOORE and KETHLEDGE, Circuit Judges; and MARBLEY, District Judge.[*]

KETHLEDGE, Circuit Judge.  Wickie Tutt was sentenced to 18 months' imprisonment after he pled guilty to participating in a 2007 check-counterfeiting scheme.  The district court based Tutt's sentence on a finding that Tutt had accumulated 18 criminal-history points and thus had a criminal-history category of VI.  *See* U.S.S.G. Ch. 5, Pt. A.

On appeal, Tutt argues that his sentence was procedurally unreasonable because the district court erred in calculating his criminal-history category.  Tutt failed to object to this calculation during his sentencing hearing, so we review for plain error.  *See United States v. Gibbs*, 182 F.3d 408, 446 (6th Cir. 1999).  Tutt must therefore show that the district court committed an error that

---

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

"was obvious or clear, affected his substantial rights, and affected the fairness, integrity, or public reputation of the judicial proceedings." *See United States v. Harmon*, 607 F.3d 233, 238 (6th Cir. 2010).

Tutt completed his prison sentence after filing his appellate brief, which raises the question of mootness. But Tutt is still subject to three years of supervised release; and his case is not moot "so long as the appeal potentially implicates the length of [his] supervised release term." *See United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007) (internal quotation marks omitted). Given the advisory nature of the supervised-release sentencing guidelines, *see United States v. O'Georgia*, 569 F.3d 281, 288 (6th Cir. 2009), the district court presumably would have discretion to eliminate or modify Tutt's term of supervised release if we were to remand. *See United States v. Genschow*, — F.3d —, 2011 WL 1885849, at *9 (6th Cir. 2011). Tutt's appeal is therefore not moot, so we may consider his arguments.

Tutt first argues that the district court incorrectly included criminal-history points from offenses that were more than ten years old and involved sentences of less than 13 months' imprisonment, in violation of U.S.S.G. § 4A1.2(e). The government concedes this point, but maintains that no plain error occurred because Tutt's other prior offenses still qualified him for criminal-history category VI, so the error did not affect his recommended sentencing range of 18 to 24 months.

Tutt responds that he was improperly assessed three other criminal-history points for a sentence of "time served" imposed in 2005, without which he would have been placed in category V. This argument is based on a series of sentences that Tutt received between 2002 and 2008. In

December 2002, a federal judge sentenced him to 40 months' imprisonment plus five years of supervised release for his involvement in a bank-fraud scheme. In 2005, a different federal judge sentenced Tutt to time served plus five years of supervised release for a separate federal bank-fraud conviction. Tutt began serving these concurrent supervised-release terms in June 2006. He thereafter violated his conditions of release by participating in the check-counterfeiting scheme giving rise to the conviction here. A district court in the Northern District of Ohio revoked his supervised release for both federal convictions and imposed two concurrent sentences of 18 months' imprisonment. When sentencing Tutt for the present matter, the district court below added this 18-month term of imprisonment to Tutt's 2005 sentence of time served, and consequently assessed three criminal-history points for the conviction under U.S.S.G. § 4A1.1(a).

Tutt argues that we cannot assess any points for the 2005 sentence because it did not involve a term of imprisonment, and thus did not "count" for sentencing purposes. This is based on a misunderstanding of the caselaw. Tutt relies on *United States v. Hall*, 531 F.3d 414 (6th Cir. 2008), for the proposition that time-served sentences do not count for criminal-history computation because they are not "sentence[s] of imprisonment." But *Hall* involved certain misdemeanor convictions that only count if, in relevant part, "the sentence was . . . a term of imprisonment of at least thirty days." *See* § 4A1.2(c)(1). Tutt's 2005 conviction, in contrast, is for a class D felony; and § 4A1.2(c) specifies that "[s]entences for *all* felony offenses are counted." (Emphasis added.) Thus, although it is true that Tutt's 2005 felony originally did not involve a term of imprisonment, that fact does not exclude the conviction from his criminal-history calculation. It still counts.

Next, Tutt argues that the district court erred by adding the 18-month term of imprisonment imposed upon revocation of supervised release to his 2005 time-served sentence. Generally, a term of imprisonment imposed for revocation of supervised release is added to the original sentence imposed, and the combined total is used to compute criminal-history points. *See* U.S.S.G. § 4A1.2(k)(1). Where, as here, "a revocation applies to multiple sentences, and such sentences are counted separately under § 4A1.2(a)(2)," we calculate criminal history by "add[ing] the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points." § 4A1.2 n.11.

Tutt argues that this calculation should not apply here because his 18-month term of imprisonment was based upon two concurrent 18-month sentences that were not "counted separately under § 4A1.1(a)(2)," as required by note 11 of § 4A1.2. But note 11 does not state that sentences *imposed upon* revocation must be counted separately; instead, it says the sentences to which the revocation "applies" must be counted separately. The most natural interpretation of this language—which is supported by the example in note 11—is that the "counted separately" requirement applies to the original sentences imposing the release condition that was later revoked. In this case, then, the requirement applies to Tutt's 2002 and 2005 felony sentences imposing supervised release. And under § 4A1.2(a)(2), the 2005 and 2002 sentences do in fact count separately, since they were not imposed on the same day and did not result from offenses contained in the same charging documents. We therefore add the 18-month term of imprisonment to the felony sentence that experiences the greatest increase in criminal-history points. *See* § 4A1.2 n.11.

Adding the 18 months to Tutt's 2002 sentence does not affect his criminal-history points, because his initial 40-month sentence for that conviction already qualifies him for the maximum three points. *See* § 4A1.1. In contrast, adding the sentence to Tutt's 2005 sentence of time served plus supervised release increases his criminal-history points by at least two. *See id.* Thus, the term of imprisonment imposed upon revocation should be added to the 2005 sentence of time served, for a total of three criminal-history points. *See id.*

Those points, plus 12 others that Tutt does not contest in his briefs, place Tutt in criminal-history category VI. He therefore cannot show that the district court committed plain error by placing him in that category and sentencing him to the very low end of his recommended 18-to-24-month guidelines range.

The district court's sentence is affirmed.